Nicholson, C. J.,
delivered the opinion of the Court.
This is an injunction bill, in which the allegations proper to be noticed are as follows:
In the spring of 1861, A. Baird, as master of the steamer “Admiral,” being indebted to Elias Thomasson in the sum of $3,300, executed his two notes each for $1,650, and at the request of Thomasson, made them payable to A. J. Walt, with whom they were deposited for collection and safe-keeping, the said Thomasson being *153 about to leave for tbe North in anticipation of the threatened war. Walt received the notes, executing a receipt therefor, and deposited them in a bank, endorsing his name thereon according to the rules of the bank. Afterwards, Walt went South, but made no collection of the notes. ' In 1863 Thomasson returned to Memphis, and instituted suit on the receipt which Walt had given him for the notes, in “the Civil Commission Court,” and obtained judgment on the 18th of Januai’y, 1864, for $3,820 without either personal service on Walt, or publication. Walt alleges that it was altogether an ex parte proceeding, fraudulently prosecuted by said Thomasson, on a claim wholly destitute of foundation, and on which he knew complainant was in no way liable. He states, further, that in 1865, Thomasson brought suit in the Common Law Court at Memphis against complainant on said judgment, and on the 14th of May, 1866, the last day of the term, a judgment by default was taken against him for $4,509, on which an execution issued. He states that the declaration in that suit is simply founded upon said judgment by default in the “Civil Commission Court,” and contains no other count. He alleges that the judgment in the Common Law Court was taken by default, through a mistake or misapprehension of his regular attorney, produced by another attorney without being employed, Having marked his name on the docket, filed pleas and afterward withdrawn them. He charges that Thomasson is a nonresident and insolvent. Thomasson answers and denies that he left the notes with complainant merely as his *154 friend and for safe-keeping, but says lie sold to Baird his interest in the steamer “Admiral,” for |3,300, and that the notes were given in payment therefor, with the complainant as endorser. He denies all fraud and relies on his judgments in the “ Civil Commission Court” and the Common 'Law Court, as legal and Valid. The allegations of the bill are sustained by Baird- and his wife, and upon the hearing the injunction was made perpetual. Thomasson has appealed. The transcript in the case, in the Common Law Court is on file as evidence; from which it appears that there is but one count in the declaration, based alone on the judgment in the Civil Commission Court, which is referred to as a judgment obtained in the “ Civil Commission Court for the District of Memphis” by plaintiff against defendant, a copy of which is filed and made part of the declaration, as follows :
Civil Commission District of Memphis,
Elias Thomasson v. A. J. Walt.
This cause came on for final hearing on the 19 th of January, 1864, before the Honorable, the Civil Commission for the District of Memphis, and, it appearing to the commission, that on the second day of December, 1863, a default was regularly taken and entered in the above stated cause as to the defendant, A. J. Walt, and, from the inquiry ordered and held, and the proof offered in the cause, the commission being fully advised in the premises, orders and directs that judgment by default be and the same is hereby rendered against the defendant A. J. Walt) and in *155 favor of plaintiff Elias Thomasson, for the sum of $3,820.85 amount of debt and interest, and the further sum of $60 assessment for the expenses of the commission in and about the same, and $20 costs taxed, making the aggregate sum of $80 costs of suit and assessment of commission. And, it is further ordered by the commission that the plaintiff Elias Thomasson, forthwith pay over to the hands of the recorder the amount of the cost of suit and assessment of the commission above set forth, to-wit: $80.
All of which is finally ordered and decreed.
It appears from the same transcript that judgment by default was entered and execution issued. There is nothing in the record from which we are informed as to the character or jurisdiction of the tribunal, called in the declaration a “Civil Commission for the District of Memphis,” but perhaps we may judicially take cognizance of the fact that “the civil commission was organized by the military commander for said district, to hear and determine all complaints and suits instituted by all loyal citizens of the United States, for the collection of all debts, the enforcement of all contracts and in other respects • to fill the places and perform the functions of the ordinary civil courts of the country, for the time being, and that persons were appointed to hold said commissions; their judgments to be final and binding when approved by the military commander.”
The question at once presents itself, was the judgment rendered by the civil commission valid, as the proceedings of a tribunal recognized as legal, either by *156 the Constitution and laws of the United States, or by the laws of war? Or, was it invalid and void because a proceeding coram non judicef
This exact question was decided by this court in the case of Heffernan v. Porter, 6 Col., 396, in which it was held, that the civil commission at Memphis was authorized, as incident to the mere right of belligerent occupation, and that the conqueror exercises, for the time ' being, the powers of a de facto government, and the jurisdiction and authority possessed and exercised by the tribunals created by him, must depend upon his discretion. It was further held, that the questions as to the power of the commander-in-chief of the. military forces of the United States, in any district in the insurrectionary States held in firm possession by force of arms, during such belligerent occupation, to establish ’such temporary government in such district, or any part thereof as he might see proper, and to appoint and control the necessary officers and agents and to prescribe the modes in which such governments should be administered, are not open questions in this court. ' The cases in our own State which are referred to as settling the question, are Rutledge v. Fogg, 3 Col., 554, and Isbell v. Farris, 5 Col., 426. In both of these cases, the questions involved had reference to the validity of the appointment of Andrew Johnson as Military Governor of the State, by the President of the United States as commander-in-chief, and the extent of his powers as such Military Governor. The appointment was held to be valid in both cases, upon the well-established doctrine *157 that the President, in the exercise of his constitutional power as commander-in-chief, may, when war actually exists, whether it be territorial or foreign, seize the enemy’s possession, and establish a temporary government and laws for the territory so seized and occupied, hence the appointment of a Military Governor was a legitimate exercise of this constitutonal power. In the latter of the cases, the court says : “ The law of war authorizes the occupying conqueror to organize and establish government over the people of the hostile country subdued and held in firm occupation.
The government so established, endures for the time the belligerent occupation continues and ends with the restitution of peace, the resumption of the regular municipal government of peace.”
Assuming that these decisions and the authorities on which they rested, settled the law in our State, this court, in Heffernan v. Porter, held the civil commission at Memphis to be a legal judicial tribunal. In doing so, however, the court expressly disregarded the opinions of the Judge Advocate, General Holt, in two eases, originating in the civil commission at Memphis, and directly involving its legality as a civil court. In the case of Daniel Able, which occurred in July, 1863, Judge Advocate General Holt held that the military commission had no jurisdiction whatever of the case. It was not a case in which the United States was party; nor one involving a military offence or affecting a military subject or relation. It was a case in the nature of a civil suit for damages between citizens, and the commission should have refused to *158 take cognizance of it. “The precise nature of the civil commission alluded to,” says Judge Holt, “is not known, but it appears to be composed of civilians and lawyers, and to exercise all the powers of a common Law and Chancery Court. If this commission has been established in Memphis by virtue of any military order as may be inferred from the papers in the case, it must be held to be an anomalous and irregular tribunal, entirely unauthorized by military 'law, such a tribunal, it is believed has never received the sanction of the War Department or been in any way recognized by it.” The Judge Advocate, therefore recommended to the Secretary of War that the proceedings be arrested, which was done.
In the case of Orgill, which occurred in October, 1863, the Judge Advocate said: “The action of the so-called ‘ Civil Commission’ held by the Provost Marshal, at Memphis, in the case of Mr. Orgill, was evidently wholly unauthorized, and should be pronounced null and void. The judgment of these tribunals, whether originally attempted to be invested with civil jurisdiction or as military courts as seeming to exercise such jurisdistion, are alike unwarranted by law or usage, and their action has become highly detrimental to the service and to the public welfare.” It is difficult to conceive of higher authority, on the question under consideration, than that furnished in the official opinion of the Judge Advocate General, not only because of his peculiar official position, but also of his eminent ability and learning as a lawyer. He does not dispute the general principle, that the mili *159 tary conqueror has the right to provide temporary government for territory held by force of arms, but' he denies the right of the military commander of a district, situated as Memphis was, to create a judicial tribunal for the trial of questions of civil rights arising between citizens of the territory so held by military occupation. He does not deny that, in such a case, the commander-in-chief might authorize the war department or a military governor to provide such a temporary tribunal.
The difference between the positions of this court, in the case of Heffernan v. Porter, and of the Judge Advocate is that the former concedes to a commander of a district the right not only to establish a military commission to try offences properly cognizable by military courts, but also to establish a civil commission to try civil causes, while the latter concedes the right of a commander of a district to establish a military commission proper, but denies his right to establish a civil commission to try civil causes, without the authority of the war department.
It is to be observed that the Confederate authority in Memphis was supplanted by the Federal authority in June, 1862, which continued substantial, complete and permanent until the close of the war. During all this time there was in office in the State a military governor, with authority to exercise all power, duties and functions pertaining to the office of military governor, including the power to establish all necessary offices, tribunals, etc., for the protection of the inhabitants of the district occupied. Under this au *160 thority Governor Johnson could have established a tribunal at Memphis for the trial of civil suits, but, upon the plainest principles of law, the appointing of a governor with such authority is inconsistent with the existence of such authority in the commander of the Department of Memphis. The object of a State, in a civil war, is to suppress rebellion and to coerce the revolted inhabitants, by the sword, into obedience to the government and law of the parent state. This end accomplished, if the revolted district was au integral part of the metropolitan government prior to such war, the general laws, proprio vigore, would extend over it. Halleck’s Inter. Law, 784. This is a necessary consequence of the doctrine that is now the prevailing law, that during the rebellion the Federal authority was only suspended so long as it was expelled by the force of rebel arms. But so soon as that authority was permanently regained, the constitution and laws of the Federal government resumed their places. It was in view of this doctrine that a military governor was appointed in Tennessee, that the constitution and laws of the Federal government might be restored as soon as practicable, and until this could be fully accomplished that the inhabitants within the subdued districts might have all the protection that a military governor could furnish to them.
The existence of the power by the commander of a military district to establish civil commissions, and continue them in force for two years after the Federal authority was restored at Memphis, is wholly unwarranted by reason, principle or authority. We are *161 therefore constrained to dissent from the holding on this point, in the case of Heffernan v. Porter. It follows that the judgment of the Law Court, in recognizing the judgment of the Civil Commission as valid was erroneous, the same being null and void.
Without noticing other valid grounds of relief in the case, the Chancellor’s decree, perpetually enjoining the judgment and execution, is affirmed with costs.